OPINION
{¶ 1} Defendant-appellant Benjamin Buck appeals from his conviction and sentence, following a guilty plea, for Burglary. Buck's appellate counsel has filed a brief pursuant to Anders v. California
(1967), 386 U.S. 738, indicating that he could not find any potentially meritorious issues for review. Buck has filed his own, pro se brief, setting forth two assignments of error.
 {¶ 2} Buck was originally charged, in two separate indictments, with two counts of Burglary, two counts of Breaking and Entering, one count of Theft of Motor Vehicle, and one count of Possession of Criminal Tools. In a negotiated plea bargain, Buck pled guilty to one count of Burglary, and the State dismissed all other charges. The trial court ordered a pre-sentence investigation. At the sentencing hearing, the trial court went through Buck's extensive record of juvenile offenses, as well as his record of adult offenses. The trial court explained why it found that Buck was among the class of offenders most likely to commit criminal offenses in the future, and also why it found that Buck was among the class of offenders committing the worst form of the offense. The trial court then imposed a maximum sentence of eight years.
 {¶ 3} From his conviction and sentence, Buck appeals.
 {¶ 4} In his pro se brief, Buck assigns the following errors:
 {¶ 5} "DEFENDANT-APPELLANT'S FIRST, FIFTH, SIXTH, ANDFOURTEENTH AMENDMENT RIGHTS OF THE UNITED STATES CONSTITUTION, AND ARTICLE I, § TWO, THREE, TEN, AND SIXTEEN OF THE CONSTITUTION OF THE STATE OF OHIO WERE VIOLATED WHEN TRIAL COUNSEL FAILED TO INVESTIGATE INTO DEFENDANT-APPELLANT'S MENTAL HEALTH, AND MEDICAL HISTORY FOR THE PURPOSES OF PRESENTING MITIGATING EVIDENCE OF HIS PSYCHOLOGICAL, AND PSYCHIATRIC HISTORY, AND EDUCATIONAL BACKGROUND PRIOR [TO] ACCEPTING AND ENTERING INTO A PLEA OF GUILTY TO THE OFFENSE IN [SIC] WHICH HE WAS CHARGED.
 {¶ 6} "THE TRIAL COURT PREJUDICIALLY ERRED BY IMPOSING THE MAXIMUM SENTENCE ALLOWED UNDER O.R.C. § 2911.12, ONE (1) COUNT OF BURGLARY WITHOUT ADEQUATELY FINDING THAT UNDER CRIM. R. 11 ET SEQ., THAT APPELLANT KNOWINGLY, INTELLIGENTLY, AND COMPETENTLY FULLY UNDERSTOOD HIS THE [SIC_ NATURE OF THE PLEA NEGOTIATION ELECTING TO PLEA [SIC] GUILTY."
 {¶ 7} This court has performed its duty, pursuant to Anders v.California, supra, to review the record independently. We have found no potential assignments of error having arguable merit.
 {¶ 8} In Buck's pro se brief, he refers to numerous matters that are not supported in the record. At the plea hearing, the trial court patiently went over with Buck, in exemplary fashion, the rights he would be waiving by pleading guilty, the elements of the offense, Burglary, to which he was pleading guilty, and the potential sentence for the offense. The trial court also elicited from Buck that he was satisfied with the advice and representation provided by his trial counsel, and that he had discussed all of the charges with his trial counsel. The trial court also elicited from Buck that he had reviewed with his trial counsel a written plea form that Buck signed, and that he understood everything in that form.
 {¶ 9} Although Buck, in his pro se brief, alludes to his having attempted to tender a plea pursuant to North Carolina v. Alford (1970),400 U.S. 25, 27 L.Ed.2d 162, 91 S.Ct. 160, we have found nothing in the record of the plea proceeding that would constitute a protestation of innocence. In short, there is nothing in this record that would support a claim that Buck did not knowingly and intelligently tender a plea of guilty to Burglary, pursuant to the plea bargain negotiated with the State.
 {¶ 10} We have also reviewed the pre-sentence investigation report, and the transcript of the sentencing proceeding, as part of our review of the entire record in this case. The trial court explained its reasons for imposing the maximum sentence, in exemplary fashion:
 {¶ 11} "Under [R.C.] 2929.14 (B) the Court finds that a minimum sentence would demean the seriousness of the offense and would not adequately protect the public. The Court finds that determination on the fact that the Defendant, along with his accomplices, were breaking into an occupied structure, not only people likely to be present but, in fact, did show up back at the home during the middle of the burglary, not adequately protect the public.
 {¶ 12} "The Court bases that on the Defendant's record. He's been to prison on at least — he's been to prison on two other occasions. He went to prison November 23, 1999. He was paroled at the expiration of his term March 7, 2001. He was readmitted to prison November 30, 2001, was released with the expiration of his term June 26, 2002, and these offenses occurred in September of 2002. Might add his previous prison term were for theft and receiving stolen property and another theft offense.
 {¶ 13} "Based upon his record and the Defendant's juvenile — the Defendant is 22 years of age. His record goes back to 1988. The last 14years. It's either he starts off being admonished for receiving stolen property, seemed to have learned a lesson four years.
 {¶ 14} "In 1992 on June 24 of that year, he had a disposition in juvenile court for receiving stolen property in case 92-735 and breaking and entering, case 92-1009. So facing one case didn't stop him from committing another one. For those offenses, he was placed on probation, put in temporary custody of children's services, and placed in programs designed to help him with his problems and rehabilitate him. That disposition was June 24, `92.
 {¶ 15} "His first probation violation was a disposition on January 13, `93. Probation was continued. It was gonna be continued to June 13, 1993; but before that could occur, before they could expire, he picked up another probation violation for which probation was extended for three months, appears he successfully got that; but before June of 1994, he had disposition for receiving stolen property case, a suspended commitment to the Department of Youth Services.
 {¶ 16} "January of `95, disposition for receiving stolen property, payment of costs suspended. Nothing. There was also a probation violation, which payment of costs was suspended. It appears that the reason that the payment of costs was suspended for receiving stolen property and the probation violation, because it appears at the same time, January 1 of `95, he was sentenced to a commitment of the Department of Youth Services for grand theft auto and for fleeing and eluding. That six-month sentence would have ended prior to June the 11th, `95 sometime. July 26 of `95, he is sentenced back to the Department of Youth Services for fleeing and eluding and grand theft auto.
 {¶ 17} "In 1998, his first adult offense is driving under suspension for which he received a suspended sentence. `99, January `99, the offense of assault as a misdemeanor, six-month jail sentence, balance was suspended; and when restitution was paid, he was placed on probation January 2 of `99.
 {¶ 18} "Probation violation in May of `99. No sanctions imposed, probation terminated.
 {¶ 19} "August of `99, driving under suspension. Jail sentence imposed, suspended for community service.
 {¶ 20} "November of `99, receiving stolen property, November of `99, theft. Defendant went to prison for 18 months and 12 months concurrent, gets out of prison and gets picked up for driving under suspension, violation of driver's license law.
 {¶ 21} "At the same time that he had a violation of driver's license law, he had disposition for failure to comply for which he was sentenced to six months in jail.
 {¶ 22} "While serving that time, he was convicted for felony theft, was sentenced to 10 months in the penitentiary. He was released from the penitentiary on June 26 of 2002 from that offense.
 {¶ 23} "It appears to be an ongoing, continuous, almost without a break life-style of one crime after another. Rules do not apply to this Defendant in this Defendant's mind. Other people's rights bear no weight in his decisions. He possesses the greatest likelihood of recidivism.
 {¶ 24} "It is therefore the order of the Court that the Defendant be sentenced to 8 years in the Ohio State Penitentiary and be ordered to pay the costs of this action."
 {¶ 25} We conclude that no plausible argument can be made that the trial court failed to comply with its duty, pursuant to R.C. 2929.14(C), and R.C. 2929.19(B)(2)(d), to make the necessary findings, and to explain its reasons, for imposing the maximum sentence. We further conclude that no plausible argument can be made that the record fails to support the trial court's findings, or its reasons for imposing the maximum sentence.
 {¶ 26} In conclusion, based upon our review of the record in this case, we find this appeal is wholly frivolous.
 {¶ 27} Accordingly, the judgment of the trial court is affirmed.
BROGAN and GRADY, JJ., concur.